HB 95XXI, Nunez-Robles vs Barr, counsel Good morning, Judge Eble. May I please start? I repsent Mr. Cristobal Nunez-Robles, who appears with his daughter in the first row of the courtroom today. Is he speaking loud enough to pick that up on there? Can you move the mic up a little closer? Stripped to its core, this case is a case about rule of law. Pereira vs. Sessions held that a putative notice to appear is not a notice to appear. Pereira vs. Sessions indicated that the statute 1229A was clear and unambiguous and was able to be understood without any type of Chevron analysis. As part of this decision, the court indicated that time and date were crucial factors to the notice to appear. This is repeated in the Board of Immigration Appeals case, Bermuda's Coda, at page 441. A putative notice to appear is not a defective document. A putative notice to appear is not one that simply contains information that's trivial or ministerially incorrect. It is one that lacks specific information and does not allow the immigration court to proceed. In our case, Mr. Nunez-Robles was provided a document, a putative notice to appear, while he was in the detention facility with a time and date that had already passed when he received the document. In fact, the time and date was at a time that the court in removal proceedings was not open, 12 o'clock in the morning. The same document was not delivered to the immigration court until five days later. The immigration court did not terminate those proceedings at that time, but continued in the proceedings. We are arguing today that the initiation of Mr. Nunez-Robles was faulty and caused the court to lack jurisdiction. You argue that the faultiness was a procedural, not a procedural, but a subject matter jurisdictional defect or a personal jurisdiction defect? Judge, we're arguing that that's a subject matter jurisdictional defect. Pereira did decide issues of statutory.  jurisdictional question. He knew he had a suit initiated against him. There's no doubt about that. I mean, a removal proceeding. And it was it just has the feeling to me to be a procedural question of time and place to appear that that that the Supreme Court has warned us not to use jurisdiction overly broadly. And so he knew there was a case against him. There's no doubt about that. And it was just the procedure of when and how to appear to show up. Now, if if they actually had a result like they like they did in Pereira, that would be one thing. But here he didn't. So I'm just curious why you I mean, I'd like your best argument why we should view it as a if we view it jurisdictional at all. Why should we view it as a subject matter rather than personal jurisdictional question? Well, 1229A does refer to the initiation of removal proceedings and and lists a number of information that must be contained in the notice to appear. Pereira held that a document without a date and time was didn't classify itself as a notice to appear under 1229A. We're talking about. But did they use a jurisdictional question there? Did they use jurisdiction? In order to reach what was ultimately an interpretation on the on the due process issue, the opening statement of Pereira is that the 1229A is. And I can read it, Your Honor. It says a notice to appear that does not inform a non-citizen when and where to appear for removal proceeding is not a notice to appear. Yeah, but that's not the word jurisdictional. That's my question. That word is not contained. OK, thank you. And when we do look at what talks about jurisdiction for purposes of these proceedings, there is no reference to a notice to appear or to more specifically Section 1229A, is there? In the in the statute or in the regulation, in the body of the legislation, they directly refer back to 1229A, Your Honor. But they they're in order to trigger jurisdiction for purposes of the agency, it requires a charging document, right? They use different language, don't they? The language that is used in 1003 and or 1003.13 and 1003.14, they refer back to a charging document. And then that document is defined later. Well, but it's not defined only as a notice to appear as defined in 1229A, is it? Well, there have been historically other documents that initiated removal proceedings prior to 1997, which would have been an order to show cause document. But since 1997, the initial document, the document that is initiates all removal proceedings and immigration proceedings is the notice to appear. In Pereira, they were they were faced with statutory language that said the stopgap rule is you can't continue to accrue time towards your 10 years when a notice to appear as defined by 1229A has been served on the petitioner, right? I mean, that's very different. I mean, that's a very clear statutory tie to a notice to appear as defined in 1229A, which requires the time and place of the hearing. That's right. Pereira court held that 1229 was definitional in nature and made the notice to appear as defined at 1229. So in order to a notice for a notice to appear to become a notice to appear or a non putative document, it would have to be defined by the statute, and then it is therefore later interpreted by the regulation. Let me go back and ask you a question about whether we get to the merits of this question at all. Didn't you have an obligation to exhaust this in your administrative proceedings? Your Honor, in our administrative proceedings, we were faced when the gentleman was detained with a set of cases that was deemed to be seminal in this arena. And while he was in the removal proceedings, he was detained for a short period of time, but he was absolutely detained. The court's underlying courts do not like to hear arguments that they believe have already been pre-decided. It wasn't until Pereira this last summer that there was some sense that the circuit courts were in error when deciding the conflict between the statute and this. Is futility an exception to the exhaustion rule? Well, the courts, the courts do interpret the statute and provisions and can overturn the decisions that are ultimately made on regulations and in terms of exhaustion. The case had already, when we began the briefing in this matter, the case was already before the 10th Circuit Court. Then Bermudez-Cota came out and made it clear that remanding would also be or filing another motion to reopen on this specific issue before the Board of Immigration Appeals would have been futile. And my question again, is futility an excuse for failure to exhaust? I would say yes, Your Honor. Is there any case law that supports that? I think in the matter of Davina, they brought up the issue of failure to exhaust. And that is 47-471-F3806. This case is pre-Pereira and essentially indicates that arguing that the immigration judge lacked jurisdiction at a later date was not, did not carry the day because jurisdiction is always at issue. Well, our jurisdiction is always at issue. But in City of Arlington versus FCC, the Supreme Court made it pretty clear that our jurisdiction in an administrative agency proceeding is dependent upon whether there's a final judgment. And the jurisdiction of the agency doesn't, that's a separate issue than whether we have jurisdiction. So I guess I respectfully disagree with the case you just cited. I don't think you can raise the agency's jurisdiction at any time. Do you have a response to that? Because it's not our jurisdiction. I think jurisdiction itself, subject matter jurisdiction would always be at issue. Well, if you were talking about a district court whose jurisdiction was parallel with ours, and if there was no federal jurisdiction, it would divest both the district court and this court of jurisdiction, I think I'd agree with you. But the jurisdiction of the BIA is very different than the jurisdiction of a federal court reviewing agency action. And I think that's what City of Arlington says. And the position of our, our position would be that this court would have the authority to consider that this jurisdictional issue should be, should be reviewed by the BIA theoretically, and then remand it back to the BIA if that's, if that's the appropriate measure that needs to be taken. If we're talking about jurisdiction, there is a final judgment from the BIA. There is, Your Honor. So if final judgment is the test, we clearly have jurisdiction because we've got a final decision. And to me, the question isn't really jurisdiction, but more deferential. Do we like to defer to agency in a way that we would remand because this particular issue wasn't raised? But, but it doesn't negate the fact we have a final judgment. It was properly appealed to us. That's right, Your Honor. It was, it went from the Board of Immigration Appeals and up to . . . And I'm troubled by our Tenth Circuit cases because some of the earlier Tenth Circuit cases suggest that if we feel that there's reason, we have discretion to go ahead and decide questions that were not submitted to the agent, to the BIA. But later Tenth Circuit cases seem to take a more rigid line or a more, a line that we really should not do things that haven't been submitted. And so my question there, and I'll ask the government as well, is which set of cases in the Tenth Circuit do we follow? We've got cases really kind of leaning both ways. Ordinarily, we say we take the first case of the Tenth Circuit, which is quite permissive of our ability to take issues not submitted to the BIA. Later cases are increasingly unwilling to do that. So I'm just troubled how you would parse all those cases out within our circuit. Do you have any advice on that? We were, when I was reviewing this matter, a case from Judge Gorsuch came up in the context of statutory contextualization between regulations and statute. And this is Hugo Rosario Gutierrez-Brisuela. This is a 2016 case. And the case didn't have jurisdictional issues in it, Your Honor, but they were able to state that because the statutory construction was such that there was the question of Chevron and whether or not Chevron deference should be given between the two statutes, that that was sufficient to consider this issue. And Your Honor, if there's no other questions, I'd like to reserve the remaining time for rebuttal. You may. Thank you. May it please the court. Nell Seymour on behalf of Attorney General William Barr. Would you address the jurisdictional question first, the judgment you raised? Because we really have to get that one decided, I guess. Yes. The government's position in this case would be that Pereira's narrow and discreet holding does not have any bearing on this case. And as far as jurisdiction is concerned, jurisdiction is And the regulations state that jurisdiction vests when the charging document is filed. I think, are you talking about jurisdiction in the agency or jurisdiction here? Yes. Is the Pereira issue properly before us? Yeah. OK. Yeah. She was going to the merits of Pereira, which is also a jurisdictional issue. Well, I mean, that's another question. Is Pereira itself a jurisdictional question or a or a kind of a comedy deferential question? And I think that's a hard issue. Comedy or comedy? But I think I think the question we all want to hear from you on is, is the Pereira issue before us, properly before us? You argued it's not because it wasn't exhausted before the BIA. Correct. That would be the government's position, Your Honor. To the extent that this argument was unexhausted, it's not properly before the court. And also for the cases that have cited this as personal jurisdiction matter. He did waive his personal jurisdiction by showing up to the court. Well, let's let's take the exhaustion issue, because Judge Ebel raised something I wasn't familiar with. I guess I got on the court after you did. And I thought all our cases said if it's not exhausted in BIA, we lack jurisdiction to hear it. But you're saying there are older cases that are more lenient. Yeah. Do you have a response to that? Because ordinarily we were supposed to follow our earlier precedent. But nobody, if there is that problem, I hadn't seen it presented in my memory anyway. I would be happy to provide supplemental briefing on that issue, Your Honor. But I think we've got all the briefing we need. Well, no. Well, that's that's an issue they didn't address. Sure. Sure. That's right. My answer for you today would be that the government's position would be that the agency would have been the appropriate body to address this matter and that it should have been exhausted before the agency and not before this court. Can I ask, is there a jurisdictional issue in the other cases that are pending in the Ninth Circuit and the other circuit or two? There's about three other cases raising the same issue. Are any of those clean of the jurisdictional problem? That is, are any of those cases where prayer was presented squarely in the before the BIA? I'm not aware of that, Your Honor. To my knowledge, I don't know of any cases that have addressed that exact issue of exhaustion before the board and is now before the Court of Appeals, if I'm understanding your question correctly. And if the government didn't raise exhaustion, the court doesn't have to worry about it in those cases. Correct. But you did raise exhaustion. We did, Your Honor. Thank you. And so should we then remand to the BIA and let them decide this in the first instance? The board would have been the appropriate body to address this issue, Your Honor, but I think more aptly, it's not an issue in this case. So I don't believe that remand would be warranted because in this case, prayer's holding is essentially an opposite in that it has nothing to do with the stop time rule or cancellation of removal. And prayer's holding was very clear that when they looked to the statute for what was required in a notice to appear, that was in the distinct context of stop time rules. So you're telling us to ignore the failure to exhaust and go to the merits? The government's position would be that it's Herrera does not affect the holding in this case and that in... Well, we only know that if we go to the merits, right? You'd be happy with us to rule in your favor on the merits and not have to address exhaustion. But you're suggesting that if we disagreed with you on the merits, you did raise exhaustion in your brief on appeal to this court. So it's before us, but appellate courts don't have to address exhaustion if they can rule against the party who didn't exhaust on the merits. We do that all the time in habeas cases where there are strict exhaustion requirements. Am I understanding your position correctly? You have two alternative grounds for winning. One is failure to exhaust and one is on the merits. Is that correct? Yes, that is correct. Go ahead. Well, pursue the merits argument then. I think you've just said one or two sentences about that, but that's the meatiest issue, I guess, before us. So as far as Herrera is concerned, Your Honour, I think, not to be repetitive, but that the courts in other circuits have agreed that the failure to include the date and time in the initial notice does not have jurisdictional significance. And specifically, this court recently decided in an unpublished case that Petitioner's attempt to expand Herrera's holding into a jurisdictional invalidation of any proceedings initiated by an NTA without the date and time should be rejected. And as far as the merits of the motion to reopen, the government maintains that the Petitioner failed to establish his prima facie case for eligibility for asylum and withholding of removal and therefore that the board did not abuse its discretion in denying the motion. Going back to the Herrera argument, what's the charging document that triggered the BIA's jurisdiction here? It would be the notice to appear. And so even though Herrera says that a notice to appear that lacks the date and time of the hearing is no notice to appear at all, you would argue that it's still a charging document? Absolutely, Your Honour, because in Herrera, they were discussing the Statute 1229A and the quote-unquote statutory glue of the word under made it clear that the NTA under 1229A needed to include the date and time. There is no such language in the regulations. And indeed, the regulations state that the time and date of the hearing should only be included where practicable. And it does not mandate that the notice to appear has to include that information in order to be a charging document or in order for jurisdiction to vest with the Immigration Court. So help us out then. Your position is that a notice to appear is a charging document. It's essential. But that it does not have to state time and place to appear. Is that right? The notice to appear is one of the enumerated examples of a charging document. But it's not necessary to qualify it as the notice to appear, necessary to give jurisdiction to the BIA. Am I reading you right? It's not necessary to have the date or the time in order for it to exist. Now, where is that line drawn?  without the time and place to appear, even though that was statutorily required. So how much else can we excise from this notice to appear before it stops being a notice to appear? Can we eliminate the charge of this is what we think you did wrong? Can we eliminate that? Well, Your Honor, the notice to appear... Can we eliminate the fact that it's before the BIA? Where is this line and what guidance do we rely on as to just how many arms we can hack off on the Monty Python fight before there's no warrior left? Well, to address that, Your Honor, I would highlight what you said about it being required by the statute. And Pereira held very clearly that it was required by the statute in the context of cancellation of removal and specifically the stop time rule, neither of which are before us today and have any bearing on this case. In this case, the notice to appear did not need to include the time or the date. But I want to... Maybe you can't answer the question because I can't answer it. So it's not realistic to expect you could either. But do you have any advice for us, just how much else? Because there's five or six things listed in the statute that should appear in the notice to appear. I'm just curious how far down that list we can excise and still have what you think is a necessary and qualified notice to appear. I do not think that question... First of all, I would not be in a position to answer that question. The BIA would be the one to answer it, wouldn't they? Isn't that a reason why there'd be good judgment here to let the BIA resolve it? The board would more aptly be able to answer that question, yes, Your Honor. They have, haven't they? Haven't they addressed the Pereira issue in this context? Yes, they have. About what else could be excised from the NTIs, what I was responding to. But yes, they have addressed it in Bermuda's CODA. Well, they've addressed it. At least these two things don't have to be in there. They haven't really given us any guidance for what else could be excised or missing. To my knowledge, no. I note Bermuda's CODA did follow the logic that we are attempting to put forth today, Your Honor, in that Pereira was narrow and involved a distinct set of facts that are not applicable today and that it has no relevance to cases like this where stop time is not an issue and where a petitioner was sufficiently informed to attend his hearing. But don't we typically, when we have a term in a statute like notice to appear and we define it, we use the same definition all over the statute? I mean, you're suggesting that notice to appear means different things in different parts of the statute and regulations in the BIA. Wouldn't that be different than how we typically interpret terms? As far as it being different from how we generally interpret terms, I think in this situation it's significant that the regulations created by the agency are what are determining what should be included in a notice to appear and that they don't mandate date or time. But they use the term notice to appear, which is a term that comes from the statute that Congress dictated and the Supreme Court has now defined what notice to appear is and what it isn't, more importantly. So does the agency have the ability to pass regs that undermine that interpretation of the statutory term? The government's position would be that the Supreme Court did answer that question in a very specific context. I would not venture to say that they were just explaining what notice to appear always needs to include or should always include, but that under 1229A in the context of cancellation of removal and the stop time rule, it does need to include a date or a time. Here, it's a motion to reopen, and as the Fourth Circuit said in Leonard v. Whitaker, that because the issue is reopening and prayer is ruled inapplicable here in a motion to reopen context, and we would support that position as well. I saw this a little differently. Perhaps the notice to appear was deficient in not giving the time to appear. The question is whether the proceedings can continue once there's a proper notice that a person is able to appear. That's normally how we would think of it. I think Judge Ebel was one of the first questions was whether this was personal jurisdiction or subject matter jurisdiction. And if that's the sort of giving notice of the date as opposed to the fact that there's a charge against you and this is the charge, that goes to the substance of the claim. When the hearing's going to be is a procedural aspect, and ordinarily, in every other context I'm aware of, there may be a defect there, but if the person shows up, if the person answers the complaint, things like that, then we can proceed. There's personal jurisdiction at that point. That's not the argument you're making. You're insisting that the notice to appear was okay. The question in my mind is, say it wasn't, what's the consequence of that? Correct, Your Honor, and I would make two points. Is that the government's position is that jurisdiction did best with the immigration court in this case. But alternatively, if this court were to decide that there was some alleged defect in the notice to appear, this other circuit and the board have affirmed the two-step notice process, wherein there is, he does waive his, the petitioner would waive his personal jurisdiction by attending the hearings, and in this case, petitioner did not allege that he either didn't receive proper notice or was not able to attend and fully participate in this proceedings. So I would agree that I think if, in this case specifically, jurisdiction best in the immigration court where the mandatory information of the date and the time is provided in a notice to a hearing after the NTA has been issued. And that was not the situation for error, right? He never got. He did not. He was removed in absentia. He never got something given the actual date and time. There's no question there of personal jurisdiction being waived or being acquired in another way. Correct, Your Honor. You know, I'm trying to still struggle about remanding to the BIA or not. This is a pure question of law that is being raised. It's a pure question of statutory law. We know what the regulation says. We know what the BIA says because they've already issued a later opinion on it. And we have the statute. Now, if we were to say, no matter what the BIA says, ultimately it's going to come up to us what does the statute require and does the BIA's rule comport with that or not? If that is the question and we would decide it de novo no matter what the BIA says, then isn't it just a wasted step to remand to the BIA for this kind of a statutory interpretation legal question? I do not believe that remand would be necessary in this case, Your Honor. You don't think remand is necessary? Other circuits have been able to decide whether or not Pereira is. So, you are not asking us to remand? I'm not asking that, no. All right. Thank you for your time, Ms. Inspiro. May it please the court. I would like to just address some issues very briefly. On the issue of exhaustion which Judge McHugh raised, I would cite the McGraw v. Credential Insurance. It's clearly used for the standard combined with the holdings in Bermuda's Coda that Pereira was not a jurisdictional holding. And it's not our position that Pereira is jurisdictional, but it's our position that Pereira's interpretation of 1229A carries necessary jurisdictional implications. I'm sorry, say that again? Pereira's interpretation of the requirements of 1229A necessarily involves jurisdictional consequences because the regulations. You said it was not a jurisdictional holding, but its interpretation has jurisdictional consequences. Is that what you're saying? That is correct. I guess. I think I was just parroting what you said, but I wanted to make sure I understood that. That's correct. In that sense, perhaps it could be construed as jurisdictional. On the question of deference, we believe this was also answered by Pereira when they found 1229 to be clear and unvigorous, no need for Chevron deference, as well as definitional in nature. Are there any cases that were contrary to your interest that aren't in the BIA setting where a Supreme Court has said a particular statutory statement means one thing and circuit courts have taken that precise statement in another context and says that exact same sentence, not a parallel or similar one, means something else in a different context? Do you have any case like that? I haven't been able to find such a case, Your Honor, and I don't think it would make sense logically. But that leads to the next question, which is what I was asking. What are the consequences of not including one of the statutory requirements in the initial plea when that is corrected later on and the person appears? What's your response to that? The whole idea that it could be corrected later on when the Supreme Court describes such a document as a punitive or alleged NTA, it doesn't ever even come into being. So I think that goes to the other question about what requirements. Well, couldn't it be, I'm sorry. No, no, please. Couldn't it be a charging document even if it's not a notice to appear? I mean, the definition of a charging document is the written instrument which initiates a proceeding before an immigration judge. And then it lists examples that are just examples. It's not that they're the only things that you could use. So all we need for jurisdiction is something very, it's less than what you need for the stopgap rule. I understand it. And had in the regs it been called something other than a notice to appear? It's called a charging document. Which is defined in the regs as including a notice to appear. As including a notice to appear. It's defined as the written instrument which initiates a proceeding before an immigration judge. I mean, the proceedings were initiated, weren't they? We would assert that they were not properly initiated. But I understand your point. And I would just say that I think for us it begs the question of then what are the requirements of a charging document? What are the requirements of a charging document or a notice to appear? Of a charging document. Well, a charging document is pretty open, isn't it? It's just the initiation of the proceedings. It would certainly have to comply with due process, with procedural due process. So you would have to decide whether the defendant was given fair notice that there was a proceeding pending against him. And if there were defects, whether he was prejudiced. On the prejudice prong, you do look at whether any potential or initial prejudice might have been cured before any consequences happened. Yes, Judge. I see that I'm well over time here. So with that. You're excused when we're asking you questions. You're allowed to answer questions after. It's okay. Could you just repeat the question? I think now your time's up. You've given some very helpful information to me. Thank you. Thank you, Your Honor. Case is submitted. I usually say counsel are excused. Let's see what happens in the next argument. I know you're not prepared on the issues specific to that petitioner. But if something is raised with respect to the Pereira issue, I think we should.